UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOSOUD ALEMARAH,

    Plaintiff,                                               Civil Action No. 19-CV-10556

vs.                                                              HON. BERNARD A. FRIEDMAN

GENERAL MOTORS LLC,

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION TO RECUSE AND/OR DISQUALIFY JUDGE

        This matter is presently before the Court on "plaintiff's motion to recuse and/or disqualify Judge Bernard A. Friedman" [docket entry 34]. As this motion, like the last two plaintiff has filed recently, has no conceivable merit, the Court shall decide it without awaiting a response. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

        Plaintiff seeks the Court's recusal under two statutes, 28 U.S.C. §§ 144 and 455, which state:

> **Section 144**:
>
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

**Section 455**:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

The leading Supreme Court case interpreting these statutes is *Liteky v. United States*, 510 U.S. 540 (1994). In that case, defendant sought to disqualify the district judge due to perceived antagonism. Defendant pointed to

> the following words and acts by the judge: stating at the outset of the trial that its purpose was to try a criminal case and not to provide a political forum; . . . limiting defense counsel's cross-examination; questioning witnesses; periodically cautioning defense counsel to confine his questions to issues material to trial; similarly admonishing witnesses to keep answers responsive to actual questions directed to material issues; admonishing [defendant] that closing argument was not a time for "making a speech" in a "political forum"; . . . giving [defendant] what petitioners considered to be an excessive sentence; [and] interrupti[ng] of the closing argument of one of [defendant's] codefendants, instructing him to cease the introduction of new facts, and to restrict himself to discussion of evidence already presented.

*Id.* at 542-43. In affirming the denial of the disqualification motion, the Supreme Court stated:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they

will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune.

. . . None of the grounds petitioners assert required disqualification. As we have described, petitioners' first recusal motion was based on rulings made, and statements uttered, by the District Judge during and after the 1983 trial; and petitioner [defendant's] second recusal motion was founded on the judge's admonishment of [defendant's] counsel and codefendants. In their briefs here, petitioners have referred to additional manifestations of alleged bias in the District Judge's conduct of the trial below, including the questions he put to certain witnesses, his alleged "anti-defendant tone," his cutting off of testimony said to be relevant to defendants' state of mind, and his post-trial refusal to allow petitioners to appeal in forma pauperis.

All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

*Id.* at 555-56 (citations and footnote omitted).

More recently, the Sixth Circuit has stated:

Under 28 U.S.C. § 455(a), (b)(1), a federal judge must disqualify himself from a proceeding where "his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party." The statute is "not based on the subjective view of a party," *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (citation omitted), and rather imposes an objective standard: a judge must disqualify himself "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (citation omitted). The

3

burden is on the moving party to justify disqualification. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999). . . .

*Burley v. Gagacki*, 834 F.3d 606, 615-16 (6th Cir. 2016).

In the present case, plaintiff claims to see evidence of bias against her and/or her attorney in (1) the Court's January 23, 2020, letter to her attorney; (2) the Court's January 29, 2020, notice indicating that defendant's summary judgment motion will be decided on the briefs; and (3) the Court's orders, issued on January 30 and February 5, 2020, denying her two motions (filed on January 27 and January 31) to strike defendant's summary judgment motion. Plaintiff asserts that the Court's letter "and recent two rulings were based upon anger, emotion, bias and prejudice against Plaintiff." Pl.'s Br. at 11. The Court shall address plaintiff's three points in turn.

The Court's January 23 letter to plaintiff's counsel, Raymond Guzall III, was written in response to Mr. Guzall's January 20 email to the Court's case manager, in which he stated:

> My Client is concerned that having her oral argument at Wayne State University will be detrimental to her and the process. She has been treated by a doctor since being terminated and still suffers emotionally taking Minipress 1 mg x 3 capsules at bedtime and Zoloft 100 mg twice a day. She was diagnosed with adjustment disorder with mixed emotional features in February of 2018 and post traumatic stress disorder on June 7, 2019. She would like to be present at the oral argument but feels extremely uncomfortable having to appear before a large crowd of students and having them listen to what she has had to endure and does not want to feel the level of feelings she would experience in that environment.
>
> It is also Counsel's opinion that subjecting Plaintiff to a large classroom environment would not be healthy for Plaintiff physically or emotionally, and that neither of the parties [sic] attorneys nor any judge would be able to completely set aside the theater atmosphere of attempting to educate students and play to the crowd which will detract from the job which needs to be performed by the attorneys and the court. Arguments will be overly drawn out and skewed for the purposes of educating and playing to the students, as will the commentaries of the court. Neither Ms. Alemerah [sic] nor her

attorney are comfortable with proceeding and performing at any University. It is therefore requested that if oral argument is needed by the court in this case that oral argument be held in a court room. Thank you, Ray, Counsel for Plaintiff, Mrs. Alemarah.

Pl.'s Ex. 2. The Court's January 23 letter responded to Mr. Guzall as follows:

> Dear Mr. Guzall,
>
> My case manager has shown me your email to her dated January 20 regarding the notice she issued at my request scheduling defendant's summary judgment motion for hearing at Wayne State University Law School.
>
> You indicate that your client wishes to attend the hearing on this motion but that due to her emotional state she would feel uncomfortable doing so at Wayne. By all means, I will accommodate her. I will remove this case from my Wayne docket and, if the motion is not resolved beforehand on the briefs, I will hold a hearing in my courtroom.
>
> Your additional comments I found to be highly offensive and entirely uncalled for. They reveal your lack of understanding of the purpose of hearing motions at a law school and your unfamiliarity with how the Court conducts these proceedings. Contrary to your uninformed assumptions, there is no "theater atmosphere," no one "play[s] to the crowd," the oral arguments are not "overly drawn out and skewed for the purpose of educating and playing to the students," and the attorneys are not called upon to "perform." Motion hearings held at a law school are official court proceedings, and the same procedures and rules, including those concerning decorum, apply there just as they do in the courtroom. The only difference is that at Wayne I do ask the attorneys to provide a short summary of the case for the students' benefit and to answer the students' questions, although very few questions are ever asked.
>
> Several of my colleagues and I have been hearing motions at area law schools for the past thirty years, and I have never before heard – or even heard of – a single complaint from any lawyer or party. As lawyers, we all have an obligation to educate clients, the public, and certainly law students about the law and the legal system. It may interest you to know that, as a means of furthering this educational goal, conducting court proceedings at law schools has been endorsed, among others, by the Federal Bar

Association, the Judicial Conference of the United States, and Chief Justice John Roberts.

Your objection to holding motion hearings at Wayne makes clear to me that you do not appreciate your professional obligation to participate in activities that are beneficial to the public. I therefore intend to ask Chief Judge Denise Page Hood, who is also the chair of this Court's pro bono program, to place your name on the list of attorneys who are to be assigned cases through this program.

Sincerely,

Bernard A. Friedman
Senior U.S. District Judge

cc: Chief Judge Denise Page Hood

In early January 2020, defendant in this matter filed a motion for summary judgment, and the Court selected it, along with various other motions in a number of the Court's civil cases, to be heard on March 18, 2020, at Wayne State University Law School. *See* Notice of Motion Hearing, dated January 17 [docket entry 20]. The Court has conducted an annual "motion day" at this law school for the last thirty years. Over this long period of time, no party or lawyer has ever – until now – objected to appearing for oral argument at this location. Mr. Guzall's fears of a "theater atmosphere" and of the arguments and the "commentaries of the court" being "overly drawn out and skewed for the purposes of educating and playing to the students" are figments of his imagination. In reality, the students (usually approximately fifty to seventy-five in number) sit quietly, listen attentively, and ask few, if any, questions. Just as in the courtroom, the hearings at the law school proceed in an orderly and dignified fashion. The only difference between the two settings is that at the law school the Court generally asks the attorneys to give a short summary of the case and of their respective views before arguing so that the students can better understand the context. The Court has never received anything but positive feedback from all involved.

Plaintiff claims the Court's January 23 letter shows that the Court "was very angry," Pl.'s Mot. ¶ 18, and that the judge "could not control his anger, emotion, bias or prejudice." Pl.'s Br. at 12. Again, plaintiff's imagination has gotten the better of her. The Court promptly accommodated plaintiff's request, indicating that, "I will remove this case from my Wayne docket and, if the motion is not resolved beforehand on the briefs, I will hold a hearing in my courtroom." The Court then calmly corrected Mr. Guzall's misconception about the purpose of scheduling motion hearings at the law school and how those proceedings are conducted. To impress upon Mr. Guzall the importance of a lawyer's responsibility to support such efforts, the Court found it appropriate to ask the Chief Judge to place him on the Court's panel of attorneys to whom pro bono cases are assigned. Whether she does so remains to be seen. She may determine that Mr. Guzall lacks the demeanor and/or the professionalism to be entrusted with such an assignment. But in any event, the Court's request that Mr. Guzall be placed on the pro bono list does not demonstrate anger or bias, but rather the Court's surprise at this attorney's unfamiliarity with law school "motion days" and his determination not to "perform[] at any University."

Plaintiff next claims to see evidence of bias in the Court's January 29, 2020, notice indicating that defendant's summary judgment motion would be decided on the briefs. This is the Court's customary practice. In the Court's experience, the vast majority of motions in civil cases can be decided without oral argument. The Court holds oral argument at the law school for the educational benefit of the students. In his January 20 email, Mr. Guzall "requested that if oral argument is needed by the court in this case that oral argument be held in a court room." The Court accommodated this request and responded that "if the motion is not resolved beforehand on the briefs, I will hold a hearing in my courtroom." Therefore, it is perplexing to say the least that

7

plaintiff would now claim that the Notice of Determination of Motion Without Oral Argument issued by the Court's case manager on January 29 is evidence "that additional retaliation is being exacted." Pl.'s Mot. ¶ 12. Whether the Court schedules a motion for oral argument depends on whether the Court believes it would be helpful in fleshing out the issues or clarifying the facts. "Bias" or "retaliation" have nothing to do with this scheduling decision.

Finally, plaintiff sees evidence of "retaliation" in the fact that the Court denied her motions to strike [docket entries 21 and 32] without awaiting response and reply briefs, and that in its order denying the second motion the Court characterized plaintiff's argument as "glib" and cautioned her, in denying her request for sanctions under 28 U.S.C. § 1927, "to examine her own filings more closely lest they fall within the purview of this statute." Again, plaintiff is hallucinating. The Court denied plaintiff's motions to strike quickly and without awaiting response and reply briefs because the motions were frivolous and the Court needed no further briefing to shed additional light on this fact. It is unfortunate if plaintiff or her attorney took offense at the quoted words and phrases contained in the Court's order denying plaintiff's second motion to strike, but the motion did glibly, and falsely, assert that the state court had decided an issue defendant raised in its summary judgment motion; and the caution was warranted because both motions served only to "multipl[y] the proceedings . . . unreasonably and vexatiously," in violation of § 1927, as does the instant one.

For these reasons, the Court finds that plaintiff has failed to meet her burden to justify disqualification. No reasonable person could conclude that the Court has any actual or apparent bias against her or her attorney. Just as in *Likeky*, plaintiff's motion is based entirely on "judicial rulings, routine trial administration efforts, and ordinary admonishments . . . to counsel," all of which

8

"occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." 510 U.S. at 556. Accordingly,

IT IS ORDERED that plaintiff's motion to recuse and/or disqualify Judge Bernard A. Friedman is denied.

Dated: February 14, 2020
      Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE